**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Kurtino Weathersbee,<br><br>Plaintiff,<br>v.<br><br>Director Moses Cheatham; Nurse Gerri Gillespie; and Southern Health Partners, Inc.,<br><br>Defendants. | C/A No.: 5:25-cv-01267-JD-KDW<br><br>**ORDER AND OPINION** |

This matter is before the Court on three Reports and Recommendations ("Reports") of United States Magistrate Judge Kaymani D. West, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Reports address Defendant Southern Health Partners, Inc.'s ("SHP") Motion to Dismiss (DE 96), Defendant Moses Cheatham's ("Cheatham") Motion for Summary Judgment (DE 112), and Defendant Gerri Gillespie's ("Gillespie") Motion to Quash Service and/or Dismiss (DE 133). (DE 158; DE 160; DE 162.) Plaintiff Kurtino Weathersbee ("Plaintiff") filed objections to the Reports concerning SHP and Cheatham. (DE 165; DE 166.) No party filed a specific objection to the Report concerning Gillespie.

For the reasons below, the Court overrules Plaintiff's objections to DE 158, sustains in part and otherwise overrules his objections to DE 160, adopts DE 158 and DE 160 as modified, and adopts DE 162. Accordingly, SHP's Motion to Dismiss is granted as to Plaintiff's § 1983 claim; Cheatham's Motion for Summary Judgment is granted in part and denied in part; and Gillespie's Motion is granted to the extent it

seeks to quash the prior service but denied insofar as it seeks dismissal. Plaintiff's individual-capacity Fourteenth Amendment damages claim against Cheatham remains pending.

**A. Background**

The Reports set forth the broader factual and procedural history. The Court incorporates that history, except as modified below, and recites the facts necessary to frame the objections and the issues requiring de novo review.

Plaintiff was a pretrial detainee during the events underlying this action. He was initially housed at the Bamberg County Detention Center and later held at the Barnwell County Detention Center. His Amended Complaint alleges, among other things, that Defendants denied or delayed necessary dental treatment because he could not pay in advance for an outside dental extraction. (DE 81 at 8, 13–16, 20–22.)

The summary judgment record contains a document titled "Bamberg County Medical Procedures," which describes a medical copayment program. It states that inmates will be charged copayments for services including dental visits but provides that "medical care is never refused to an inmate because of an inability to pay." (DE 112-7 at 62.) The same document lists a $50 dental visit copayment. (*Id.*)

Plaintiff was transferred to Barnwell in November 2023. In January 2024, after a filling came out, he complained of a cavity. A medical record reflects that Gillespie informed Plaintiff that the available dentist did not perform fillings but could perform an extraction, and the record reflects that Plaintiff declined an

extraction at that time. (DE 112-8 at 106–08.) Nothing in the January records expressly attributes that refusal to an advance payment requirement.

The circumstances changed by June 2024. On June 2, Plaintiff requested placement on the dental list for an extraction because of a hole in his tooth. (DE 112-8 at 101–02.) Medical personnel prescribed amoxicillin and said they would check with Bamberg and Cheatham about the dental visit and its cost. (*Id.*) Plaintiff then requested that, if Bamberg or Cheatham approved the visit, the cost be taken from his inmate account as funds became available. (DE 112-6 at 35–36.)

The responsive records permit an inference that Cheatham personally participated in the payment and transport arrangements. Gillespie advised Plaintiff that Cheatham would determine the cost, that payment was required "up front," that a cashier's check or money order was needed before service, and that Cheatham would then make the arrangements. (DE 112-6 at 36.) Plaintiff objected to the advance payment requirement and stated that he wanted to grieve Cheatham, Gillespie, and SHP. (*Id*. at 37.) On June 17, after Plaintiff again sought relief, Gillespie recorded that she had "just got off the phone with Cpt. Cheatham" and that Cheatham would take Plaintiff to the dentist "[a]s soon as your family takes a cashier check or money order" to the jail. (*Id*. at 38.) Cheatham's handwritten June 5 response likewise discusses payment and arrangements for outside dental services. (DE 112-12 at 1.)

Cheatham contends that he understood Plaintiff to be requesting an elective outside dental procedure, that no healthcare provider advised him Plaintiff had a serious or urgent condition requiring an extraction, and that he lacked access to

Barnwell's medical records. (Cheatham Aff. 2–3, DE 112-2.) The June 5 grievance, however, stated that Plaintiff hoped not to be "forced to suffer in this pain" because he could not pay up front, while the response attributed the advance payment arrangement to Cheatham. (DE 112-6 at 36; DE 112-12 at 1.) The same document contains no reference to an abscess and no recommendation from a medical professional that extraction was urgent or medically necessary. (*Id.*)

Plaintiff's dental complaints continued after those June payment communications. On June 25, he reported a knot and what he described as an abscess and requested a stronger antibiotic; he was seen the next day and prescribed penicillin. (DE 112-8 at 97–99.) Later records document recurring dental complaints and treatment with antibiotics and analgesics. On December 30, 2024, medical personnel documented decay, redness, swelling and prescribed amoxicillin and ibuprofen. (*Id.* at 87–89.) After Plaintiff entered South Carolina Department of Corrections ("SCDC") custody in February 2025, records initially noted a broken tooth without swelling or abscess and later documented an abscess and scheduled an extraction. (DE 112-10 at 8–11, 19–20.)

**B. Reports and Objections**

**1. SHP**

The Report addressing SHP treats it as a private corporation acting under color of state law in providing contracted inmate healthcare. It analyzes Plaintiff's § 1983 claim under *Monell v. Department of Soc. Services*, 436 U.S. 658 (1978). (DE 158 at 5–6.) The Report concludes that the Amended Complaint does not plausibly attribute

the challenged advance payment requirement to a SHP policy or custom. It emphasizes that Plaintiff himself describes the requirement as a Bamberg County policy, and it finds no sufficient allegation that a SHP final policymaker adopted the requirement. The Report also notes the absence of an alleged deficient SHP training practice that caused the alleged deprivation, or that a persistent and widespread SHP practice constituted a custom with the force of law. (*Id.* at 6–9.) The Report also considers Plaintiff's assertions that SHP nurses documented his medical condition and that Cheatham relied on SHP personnel for inmate health information. But the Report concludes those circumstances do not themselves establish corporate liability under *Monell*. (*Id.* at 7–9.) It also reasons that Plaintiff's reliance on his experience with Gillespie does not establish the requisite SHP policy or custom. (*Id.* at 9.) The Report recommends granting DE 96 as to Plaintiff's § 1983 claim and, in a footnote, recommends declining supplemental jurisdiction over the remaining state law claims if the federal claim against SHP is dismissed. (*Id.* at 9–10 & n.7.)

Plaintiff objects on several related grounds. He first disputes SHP's argument, noted in the Report, that his claim against the corporate defendant should be treated only as an official capacity claim, emphasizing that DE 81 purports to sue SHP in both capacities. (DE 166 at 1.) More substantively, Plaintiff contends that the Report construes his theory of SHP liability too narrowly. He argues that SHP was the contracted healthcare provider. He also contends that Gillespie and other SHP nurses documented his continuing dental pain, infections, and need for treatment over several months. Plaintiff also alleges that Cheatham asserted he relied on SHP

nurses for medical information, and that those nurses allegedly failed to communicate the seriousness of Plaintiff's condition or continued to enforce the challenged advance payment arrangement. (*Id.* at 1–2.) Plaintiff further relies on Cheatham's prior filing and state detention standards for the proposition that the contracted healthcare provider was responsible for developing medical policies and procedures, and he, therefore, disputes the Report's conclusion that the challenged arrangement cannot plausibly be attributed to SHP. (*Id.* at 2–3.)

**2. Cheatham**

The Report's analysis of Cheatham applies the Fourteenth Amendment standard announced in *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023). (DE 160 at 4–5.) It recognizes that *Short* does not require actual subjective knowledge and concludes that Plaintiff's decaying tooth could constitute a serious medical condition. (*Id.* at 5, 10–12.) The Report nevertheless recommends summary judgment on the merits. It reasons that Cheatham, a non-medical administrator, was not shown to have been informed that Plaintiff's requested extraction was medically necessary or urgent. (*Id.* at 11–15.) The Report found that Cheatham reasonably understood Plaintiff to be seeking elective outside dental treatment and merely communicated the process for obtaining that treatment, and that the evidence did not establish that Cheatham intentionally, knowingly, or recklessly acted in the face of an unjustifiably high medical risk. (*Id.* at 12–16.) The Report further states that there is "no credible evidence" that the delay in extraction worsened Plaintiff's condition. (*Id.* at 16.)

DE 160 separately concludes that Plaintiff principally alleges Cheatham's own conduct rather than supervisory liability and, alternatively, has not established supervisory liability under *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). (DE 160 at 17.) It recommends summary judgment on any official capacity theory under *Monell*, concludes that Cheatham is alternatively entitled to qualified immunity, rejects Cheatham's PLRA exhaustion defense, and recommends judgment on Plaintiff's requests for declaratory and injunctive relief. (*Id.* at 16 n.9, 17–20.) The Report also recommends judgment on Plaintiff's state law theories, addressing the SCTCA, S.C. Code Ann. §§ 24-7-110 and 24-13-80, negligence per se, negligence and gross negligence, and outrage or intentional infliction of emotional distress. (*Id.* at 21–24 & n.12.)

Plaintiff objects to the Report's adverse recommendations on several grounds. First, he contends that the Report materially understates Cheatham's personal involvement. According to Plaintiff, Cheatham did not merely communicate an existing Bamberg policy but personally imposed an arrangement requiring an up-front cashier's check or money order before an outside dental appointment would be made. He contends Cheatham did so despite the written Bamberg medical procedure stating that medical care would not be refused because of inability to pay. (DE 165 at 1–10, 16–23; DE 165-3 at 1–6.) Plaintiff relies on Cheatham's discovery responses concerning the absence of a comprehensive written detention policy manual and characterizes the advance payment requirement as Cheatham's own unwritten arrangement. (DE 165 at 16–18; DE 165-5 at 1–3.)

Plaintiff also disputes several factual premises underlying the Report's merits analysis. He denies requesting "elective" dental care or independently choosing an outside provider, emphasizing that neither Bamberg nor Barnwell had an institutional dentist and that he simply requested placement on the dental list for extraction. (DE 165 at 18–28.) He disputes the Report's characterization of his January 2024 refusal and argues that the medical records document recurring pain, swelling, infection, antibiotic treatment, and a reported abscess beginning well before his transfer to SCDC. (*Id.* at 3–15.) Plaintiff also contends that the June records, including his request not to be forced to remain in pain because he could not pay in advance, placed Cheatham on notice of both his dental problem and inability to satisfy the payment requirement. (*Id.* at 5–10, 16–24.)

Second, Plaintiff contends that the Report's application of *Short* effectively required actual knowledge even though *Short* permits liability when the risk was one Cheatham "should have known." He relies on his repeated complaints, medication, later swelling and decay, and eventual abscess and extraction as evidence of a serious condition and resulting harm. (DE 165 at 10–18; DE 165-3 at 1–6.) Plaintiff also disputes the Report's reliance on later SCDC "no show" entries and asks the Court to take judicial notice that institutional lockdowns, staffing limitations, or rescheduling—not unwillingness to receive treatment—caused those missed appointments. (DE 165 at 13–16; DE 165-1.)

Third, Plaintiff challenges the Report's reliance on Cheatham's status as a non-medical administrator, arguing that an official may not defer to medical personnel

while personally interfering with access to the treatment those personnel are attempting to arrange. (DE 165 at 16–26; DE 165-6 at 1–5.) He separately objects to the supervisory and official capacity recommendations. As to official capacity liability, Plaintiff disputes the Report's reliance on the proposition that one employee's conduct cannot support *Monell* liability and maintains that Cheatham exercised policymaking authority over the challenged arrangement and that the practice was sufficiently established to constitute a custom. (DE 165 at 24–29; DE 165-3 at 1–6.)

Fourth, Plaintiff separately objects to qualified immunity. He argues that a pretrial detainee's right to adequate medical care and freedom from deliberate indifference was clearly established, and that a reasonable detention administrator would have understood that conditioning necessary dental care for an indigent detainee on advance payment—contrary, in Plaintiff's view, to the governing medical procedure and South Carolina statutes—was unlawful. (DE 165-3 at 1–6.)

Fifth, Plaintiff objects to the prospective relief recommendation. He contends that he seeks to enjoin Cheatham's allegedly "unofficial" arrangement rather than an established Bamberg County policy and argues that the controversy, therefore, remains live. (DE 165-5 at 1–3.)

Finally, Plaintiff objects to the Report's disposition of his negligence, gross-negligence, statutory-duty, and SCTCA theories. He invokes S.C. Code Ann. §§ 24-5-80, 24-7-110, and 24-13-80, together with the written Bamberg procedure, and contends that Cheatham's personal implementation of the advance payment requirement breached duties owed to Plaintiff and supports individual liability or

gross negligence. (DE 165 at 19, 24, 28; DE 165-3 at 2–6; DE 165-6 at 1–5.) Plaintiff expressly concedes, however, his claim for outrage or intentional infliction of emotional distress. (DE 165-6 at 2.) The Court addresses the remaining discernible objections below and has considered the supporting factual assertions and exhibits even where they are not separately repeated in this Order.

#### 3. Gillespie

The third Report concludes that Plaintiff's attempted service on Gillespie through her former employer was defective. The certified mailing was directed through SHP personnel at a Tennessee address and was signed for by a different individual who did not identify herself as Gillespie's authorized agent. (DE 104; DE 162 at 5–6.) Gillespie no longer worked for SHP when service was attempted. (DE 162 at 6.)

The Report nevertheless recommends quashing service rather than dismissing Gillespie. It considers Plaintiff's incarcerated and in forma pauperis status, his reliance on the Marshals Service, his limited ability to obtain a former employee's private address, counsel's representation of both SHP and Gillespie for purposes of the present motion, and the ability to cure any scheduling prejudice. (*Id*. at 8–10.) No party objects to that recommendation.

### C. Standards of Review

#### 1. Report and Recommendation

A magistrate judge's recommendation carries no presumptive weight, and responsibility for the final determination remains with the district court. *Mathews v.*

*Weber*, 423 U.S. 261, 270–71 (1976). The Court must make a de novo determination of any portion of a Report to which a party makes a specific written objection and may "accept, reject, or modify" the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

An objection is sufficiently specific when it "reasonably . . . alert[s] the district court of the true ground for the objection." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). An objection need not present a novel argument; even a restatement of a claim may require de novo review when it clearly identifies the ground of disagreement. *Id.* at 460–61 (discussing *Martin v. Duffy*, 858 F.3d 239, 245–46 (4th Cir. 2017)). Where no specific objection is made, the Court need only "satisfy itself that there is no clear error on the face of the record." *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

**2. Motion to Dismiss**

To survive Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint does not satisfy that standard through "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* The Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor, but it need not accept "unwarranted inferences, unreasonable

conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Because SHP's motion arises under Rule 12(b)(6), the adequacy of the claim ordinarily is measured by the operative pleading and materials properly considered with it. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). The Court therefore does not adopt the Report to the extent it recites the superseded "no set of facts" formulation of Rule 12(b)(6). (*See* DE 158 at 3.)

**3. Summary Judgment**

Summary judgment is appropriate when the movant establishes "that there is no genuine dispute as to any material fact" and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it could affect the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court views competent evidence and draws all justifiable inferences in the nonmovant's favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," not functions of the Court at summary judgment. *Id.* At the same time, the nonmovant must identify evidence sufficient to permit a reasonable jury to find in his

favor; a mere scintilla, speculation, or legal conclusion does not create a genuine dispute. *Id.* at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

**D. Discussion**

**1. SHP's Motion to Dismiss**

Plaintiff's objections do not cure the pleading deficiency identified by DE 158, although the Court modifies several aspects of the Report's reasoning.

At the outset, Plaintiff objects to SHP's argument that, because SHP is a corporation, the claim should not proceed against it in an "individual capacity." (DE 166 at 1.) The capacity label does not affect the disposition. SHP is the corporate defendant itself, and the Court construes DE 81 as asserting a direct § 1983 claim against SHP. Whether Plaintiff describes that claim as "individual," "official," or both does not create a separate basis of liability. The pertinent question is whether the alleged constitutional deprivation is attributable to SHP's own corporate policy, custom, decision, or deliberately indifferent omission. The Report did not rely on the capacity terminology as an independent ground for dismissal, and neither does this Court.

A private corporation performing a governmental medical function may be liable under § 1983, but it is not vicariously liable merely because one or more of its employees allegedly violated the Constitution. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *see also Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003). Rather, the constitutional injury must result from conduct attributable to the entity itself under *Monell*. See *Monell*, 436 U.S. at 694.

The Fourth Circuit recognizes four principal means of establishing such corporate or municipal action: "(1) through an express policy . . .; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). The challenged policy, decision, omission, or custom must also be the "moving force" behind the federal deprivation. *Washington v. Housing Authority of Columbia*, 58 F.4th 170, 182–83 (4th Cir. 2023).

Plaintiff's objection invokes both the challenged payment arrangement and SHP's broader responsibility for medical care. He argues that SHP was the contracted healthcare provider, that Gillespie and other SHP nurses documented his dental condition over several months, that Cheatham allegedly relied on those nurses for medical information, and that SHP personnel either failed to communicate the seriousness of his condition or continued to enforce the advance payment requirement. (DE 166 at 1–2.) Plaintiff also relies on Cheatham's prior filing and state detention standards to argue that a contracted healthcare provider bears responsibility for developing medical policies and procedures. (*Id.* at 2–3.) The Court has considered those objections de novo.

*Swink v. S. Health Partners, Inc.*, 160 F.4th 438 (4th Cir. 2025), confirms that those subjects can matter to a *Monell* analysis. There, the contracts themselves

showed that the counties had delegated to SHP "final authority to make decisions about inmates' medical care," and the record contained evidence that SHP took days to obtain inmate medication and failed to have medical personnel available on weekends. *Id.* at 452–53. The Fourth Circuit concluded that a reasonable jury could find SHP's decisions and practices were the moving force behind the deprivation. *Id.* *Swink* also confirms that a single decision may constitute policy when made by one possessing final policymaking authority. *See id.* at 452–53; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). The Court, therefore, does not adopt DE 158's categorical statement that the conduct of a single employee can never support *Monell* liability.

But *Swink* does not cure DE 81. Unlike the summary judgment record in *Swink*, the operative pleading here does not allege contractual terms delegating to SHP final authority over the challenged advance payment and transportation arrangement. Nor does the pleading allege or identify an SHP final policymaker who adopted or ratified that arrangement or identify an SHP corporate practice requiring advance payment before outside dental treatment. By contrast, DE 81 attributes the arrangement principally to Bamberg County and Cheatham. Plaintiff alleges, for example, that the "medical care system as a whole is deliberate indifference by Bamberg County Detention Center official Moses Cheatham due to his individual policy and arrangements for dental services." (DE 81 at 16.) He also alleges that SHP employees "caused and enforced the wrong" by denying dental care because he could

not pay up front. (*Id.* at 15.) Plaintiff also pleads that it was Cheatham who required him to pay up front. (*Id.*)

Plaintiff's alternative theory concerning SHP nurses does not change the result. DE 81 alleges a "failure to train, supervise, and oversee several of its nurses who were not relaying information of Plaintiff's serious condition," possibly because of Cheatham's "advice, judgment and decision-making." (*Id.* at 22.) Liberally construed, that allegation asserts more than misconduct by Gillespie alone. But the number of employees allegedly involved does not dispense with the corporate causation requirement. A custom based on employee conduct must be sufficiently "persistent and widespread" to be fairly attributable to the entity, and corporate fault requires facts supporting actual or constructive knowledge by responsible policymakers and deliberate failure to correct the practice. *See Spell v. McDaniel*, 824 F.2d 1380, 1386, 1391 (4th Cir. 1987). DE 81 does not allege facts identifying an SHP practice of withholding serious medical information from detention officials, facts showing that an SHP policymaker knew of and deliberately permitted such a practice, or facts identifying a particular training deficiency deliberately maintained by SHP that caused Plaintiff's injury. *See City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989) (reasoning that municipal liability could be found on failure to train theory when the failure constituted a custom that resulted in deliberate indifference to the rights of the aggrieved).

Thus, even assuming Gillespie or other SHP nurses individually failed to communicate Plaintiff's condition or improperly enforced the advance payment

arrangement, those allegations do not, without more, make SHP liable for their conduct under § 1983. That SHP was the contracted healthcare provider and that several SHP employees participated in Plaintiff's course of care may bear on state action and on the liability of particular medical providers, but those circumstances do not themselves plausibly establish an SHP policy or custom.

Plaintiff's reliance on Cheatham's litigation filings and other discovery materials does not alter the Rule 12(b)(6) inquiry. (DE 166 at 2–3.) DE 96 is a motion to dismiss, not a motion for summary judgment. Plaintiff, therefore. cannot defeat it merely by asserting that materials developed in discovery create a "genuine issue" for trial. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 184. And even if the Court considered the general proposition that a contracted healthcare provider bears responsibility for developing medical procedures, that proposition would not establish that SHP adopted the particular financial and transportation arrangement challenged here or that the alleged failures of its nurses resulted from an SHP policy, custom, final policymaker decision, or deliberately indifferent corporate omission.

Accordingly, the Court agrees with DE 158's ultimate conclusion that DE 81 does not plausibly state a § 1983 claim against SHP. Plaintiff's objections are, therefore, overruled, and SHP's Motion is granted as to that claim.

The Court does not, however, adopt footnote seven of DE 158 insofar as it recommends declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). (DE

158 at 10 n.7.) Section 1367(c)(3) applies when "the district court has dismissed all claims over which it has original jurisdiction." Plaintiff's federal claim against Gillespie remains pending. The statutory premise for subsection (c)(3), therefore, does not presently exist. Any state law claim against SHP that has not otherwise been adjudicated remains pending.

**2. Cheatham's Motion for Summary Judgment**

**a. Scope of DE 165 and Plaintiff's judicial notice request**

As explained above, the Court has reviewed DE 165 in its entirety, including the arguments contained in DE 165-3, DE 165-5, and DE 165-6. The Court does not, however, treat factual assertions or new causes of action first raised in the objections as amendments to the operative pleading. *See S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 184–85.

Plaintiff asks the Court to take judicial notice that later SCDC entries reflecting missed dental appointments resulted from institutional lockdowns, staffing limitations, rescheduling, or circumstances outside his control. (DE 165 at 13–16; DE 165-1.) Federal Rule of Evidence 201 permits judicial notice of an adjudicative fact only when it is "not subject to reasonable dispute" because it is generally known within the Court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The reason a particular appointment was missed is a disputed adjudicative fact on this record. The request for judicial notice is, therefore, denied.

The issue is ultimately immaterial to Cheatham's Motion. The Court does not rely on Plaintiff's later SCDC "no show" entries in deciding whether Cheatham's June 2024 conduct violated the Fourteenth Amendment. Thus, the Court need not determine why those later appointments were missed.

**b. Fourteenth Amendment medical care claim**

Plaintiff's principal objections identify material problems with DE 160's treatment of both the governing standard and the summary judgment record.

Plaintiff first objects that the Report improperly characterizes Cheatham as merely communicating an existing policy concerning an elective outside dental procedure. (DE 165 at 16–29.) He contends that Cheatham personally imposed the advance payment requirement. Plaintiff also presses that he never requested an elective procedure or independently chose an outside provider. Plaintiff also contends that because neither detention facility had an institutional dentist, an outside appointment was simply the mechanism for obtaining dental care. (*Id.* at 18–28.) Plaintiff also emphasizes that the June 5 grievance told Cheatham that the payment requirement was causing him to "suffer in this pain," and that the June 17 request described extreme pain, a sore jaw, and a swollen and tender gum. (*Id.* at 5–10, 16–24.) Those objections require de novo consideration of the record rather than acceptance of the competing characterization urged by Cheatham.

*Short v. Hartman* holds that a pretrial detainee asserting constitutionally inadequate medical care must show:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly

> acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

87 F.4th at 611. Actual subjective knowledge "is no longer necessary;" a plaintiff may satisfy the standard when the risk was "known or so obvious that it should be known." *Id.* at 611–12. Negligence, however, remains insufficient. *See id.*

The Fourth Circuit has since reinforced two principles pertinent here. First, available information may permit a jury to find that an official should have known of the condition and risk even when actual subjective knowledge is disputed. *See Swink v.*, 160 F.4th at 451–52. Second, although nonmedical officials generally may rely on medical personnel, that reliance "was not without limit." *Rhoads v. Riddell*, 180 F.4th 171, 182–83 (4th Cir. 2026). A non-medical official may not disregard indications that the treatment being provided is inadequate merely because medical personnel are involved. *See id.* at 183.

Against that standard, the Court sustains Plaintiff's objections to several aspects of DE 160. Although the Report correctly recites *Short*, its application repeatedly emphasizes whether Cheatham was actually informed by medical personnel that Plaintiff had a serious condition. (DE 160 at 12–16.) That circumstance is relevant, but it is not dispositive after *Short*. Likewise, the mere reliance on or presence of an opinion from a medical professional does not relieve a non-medical officer of liability when facts exist that suggest the non-medical officer had personal knowledge of the serious condition. *See Rhoads*, 180 F.4th at 182–83.

The question includes what Cheatham reasonably should have known from the information before him.

The Court also cannot accept at summary judgment the Report's characterization that Cheatham simply supplied neutral information concerning an established Bamberg policy. The record permits a different inference. On June 5, Plaintiff wrote:

> HOPEFULLY I'M NOT FORCED TO SUFFER IN THIS PAIN BEING UNABLE TO PAY MONEY UPFRONT AS YOU TOLD ME YOU AND CAPTAIN MOSES CHEETUM SAY I HAVE TO . . . .

(DE 112-6 at 36; *see* DE 112-12 at 1.) The response immediately following Plaintiff's statement provides, "PER CPT CHEATHAM," that payment "IS REQUIRED UP FRONT," that a cashier's check or money order must be supplied before the appointment, and that arrangements would then be made by Cheatham. (DE 112-6 at 36.) The record, therefore, permits a reasonable jury to find that Cheatham had notice not merely that Plaintiff desired a dental visit, but that Plaintiff was experiencing pain, could not satisfy the advance payment requirement, and believed the financial condition was preventing him from receiving dental care. The June 17 record strengthens that inference. Plaintiff reported:

> I AM STILL IN EXTREME PAIN AND MY JAW IS SORE WITH MY GUM SWOLLEN AND VERY TENDER TO THE TOUCH . . . . I AM STILL IN PAIN AND NEED RELIEF.

(DE 112-6 at 38.) Gillespie's response states that she had "JUST GOT OFF THE PHONE WITH CPT. CHEATHAM" and that Cheatham said he would take Plaintiff to the dentist once Plaintiff's family delivered a cashier's check or money order. (*Id.*) The record does not disclose the precise content of Gillespie's telephone conversation

with Cheatham. At summary judgment, however, the Court must draw reasonable inferences in Plaintiff's favor rather than assume that Gillespie called Cheatham in response to the dental complaint without communicating anything concerning the complaint's substance. *See Anderson*, 477 U.S. at 255 (holding that credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether his ruling is on motion for summary judgment or for directed verdict; evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor).

The Court likewise does not adopt DE 160's characterization of the requested treatment as undisputedly "elective." Cheatham avers that he understood the request that way. (Cheatham Aff. 2–3, DE 112-2.) But Plaintiff disputes that characterization, and the record reflects that no dentist was providing services at either Bamberg or Barnwell at the relevant time. (*See* DE 160 at 8 n.6.) Plaintiff's June request asked to be placed on the "dentist list for extraction." (DE 112-8 at 1101–02.) The fact that the appointment necessarily would occur outside the facility does not establish as a matter of law that Plaintiff independently sought optional or elective outside treatment. Cheatham's understanding remains evidence for the factfinder, but it cannot be converted into an undisputed historical fact.

Nor does Plaintiff's January 2024 refusal compel a different result. The January records do not themselves attribute that refusal to an advance payment requirement. (DE 112-8 at 106–08.) But whatever Plaintiff's reason for declining an extraction months earlier, by June he affirmatively requested an extraction and

complained that the advance payment requirement was causing him to remain in pain. The relevant constitutional inquiry, therefore, concerns Cheatham's response to the circumstances before him.

For purposes of Rule 56, the Court agrees with the Report that Plaintiff has produced sufficient evidence of an objectively serious dental condition. (DE 160 at 10–12.) *Formica v. Aylor* explains that a cavity is "a degenerative condition" that, when untreated, can produce significant pain and require progressively more invasive treatment. 739 F. App'x 745, 756 (4th Cir. 2018). Plaintiff's records reflect repeated dental pain, antibiotic treatment, later redness and swelling, and an eventual abscess and extraction. (DE 112-8 at 87–102; DE 112-10 at 19.)

The later records do not establish that every subsequent development was communicated to Cheatham. Plaintiff has not shown, for example, that the June 25 reference to an abscess or later medical findings were personally transmitted to Cheatham. But those later records remain relevant to whether Plaintiff was harmed by the alleged delay. And the absence of proof that a healthcare professional expressly used the words "medically necessary," "urgent," or "abscess" when speaking to Cheatham does not eliminate the competing evidence concerning what Cheatham himself was told and what he allegedly did in response.

*Formica* is instructive, although unpublished and factually distinguishable. 739 F. App'x 745, 756 (4th Cir. 2018). There, the Fourth Circuit concluded that evidence could support deliberate indifference where a jail medical supervisor continued conditioning needed dental treatment on advance funds despite the

inmate's complaints. *See id.* The Fourth Circuit also noted professional dental findings and a handbook provision stating that inmates would not be denied medical services because of inability to pay. *See id.* at 751–59. The evidence against Nurse Pitts was stronger because she received professional dental findings and recommendations not shown to have reached Cheatham. But *Formica* confirms that maintaining a financial barrier to dental treatment despite known pain, inability to pay, and a no-denial-for-indigency policy is relevant to the deliberate-indifference analysis. 739 F. App'x 745, 751–59 (4th Cir. 2018).

Viewed most favorably to Plaintiff, the evidence here would permit a jury to find that Cheatham intentionally maintained an advance payment condition after being informed that Plaintiff was in pain and could not satisfy that condition. The evidence would also permit a jury to find that Cheatham knew or should have known that maintaining an indefinite financial barrier to a requested dental extraction presented an unjustifiably high risk of continued pain or deterioration; and that Plaintiff experienced prolonged pain and subsequent deterioration while definitive dental treatment remained unavailable. *See Short*, 87 F.4th at 611.

The written Bamberg procedure also informs that objective inquiry. It stated that, although inmates were responsible for medical copayments, "medical care is never refused to an inmate because of an inability to pay." (DE 112-7 at 62.) A violation of institutional policy does not, by itself, establish a constitutional violation. But the procedure is relevant evidence when determining whether the challenged

financial condition was objectively reasonable and what a detention administrator should have understood concerning indigent inmates' access to care.

The Court, therefore, cannot conclude as a matter of law that Plaintiff fails *Short*'s second or third elements. Nor does the Court adopt DE 160's statement that there is "no credible evidence" that delay worsened Plaintiff's condition. (DE 160 at 16.) "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson*, 477 U.S. at 255.

Accordingly, Plaintiff's objection is sustained as to the individual capacity Fourteenth Amendment medical care claim, and Cheatham's Motion for Summary Judgment is denied as to that claim.

#### c. Qualified immunity

Plaintiff separately objects to DE 160's qualified immunity recommendation. (DE 165-3 at 1–6.) He argues that the right of a pretrial detainee to adequate medical care and freedom from deliberate indifference was clearly established and that Cheatham could not reasonably condition access to needed dental care on advance payment after being informed that Plaintiff was suffering pain and could not pay.

Qualified immunity requires the Court to consider whether the facts, viewed in Plaintiff's favor, establish a constitutional violation and whether the right was clearly established at the time. *See Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). The plaintiff bears the burden on the constitutional violation prong, while the defendant bears the burden on clearly established law. See i*d*. Courts may address the prongs in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the above reasons, a reasonable jury could find a Fourteenth Amendment violation. The first prong, therefore, cannot be resolved for Cheatham at summary judgment.

The second prong likewise does not support summary judgment. In *Tarashuk v. Givens*, decided before the events at issue, the Fourth Circuit held that the pertinent right may be defined as "a pretrial detainee's right to adequate medical care and freedom from deliberate indifference to his serious medical needs," and it expressly rejected a more fact-specific formulation as unnecessarily narrow. 53 F.4th 154, 163–67 (4th Cir. 2022). *Tarashuk* also reiterated that a prior case need not involve the "very action in question" so long as existing precedent supplied fair warning. *Id.* at 165–67 (quoting *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). *Short*, decided before June 2024, then made clear that a pretrial detainee may establish deliberate indifference where the risk is known or so obvious that it should be known. 87 F.4th at 611–12. *Rhoads* later confirmed that *Short* "simply introduced a different method of establishing the knowledge element" and did not unsettle the already clearly established right. 180 F.4th at 181–82.

This does not mean that every disagreement over a dental copayment, every departure from an institutional procedure, or every delayed dental appointment violates clearly established federal law. Neither the Bamberg procedure nor the cited South Carolina statutes, standing alone, define the federal right or defeat qualified immunity. But they are relevant here as circumstances bearing on objective reasonableness and notice. Viewed in Plaintiff's favor, those circumstances include

that Plaintiff expressly advised Cheatham that the advance payment requirement was causing him to remain in pain and that Cheatham allegedly maintained that financial barrier despite Plaintiff's inability to pay. It also includes the fact that Cheatham was again contacted when Plaintiff complained of extreme pain and swelling, and that the applicable written procedure stated that inability to pay would not result in refusal of medical care. (DE 112-6 at 36, 38; DE 112-7 at 62.) Likewise, the record reflects that the treating providers documented that it was Cheatham that required payment up front. (DE 112-12 at 1.)

*Formica* provides a close factual analogy, although it is nonprecedential and, therefore, does not itself establish the law. In vacating summary judgment for Nurse Pitts, the Fourth Circuit rejected her qualified immunity argument by relying on *Scinto*'s already-established rule that the identical conduct need not previously have been held unlawful so long as the governing right gave fair warning. 739 F. App'x at 759 & n.8. And *Rhoads* confirms that a non-medical official's entitlement to rely on medical personnel has limits when information available to the official indicates that existing care is inadequate. 180 F.4th at 182–84.

Cheatham disputes what he understood, what Gillespie told him, and whether the requested treatment was medically necessary. Those disputes are important. But on summary judgment, the Court must view the evidence and draw reasonable inferences in Plaintiff's favor, including when considering qualified immunity. *See Stanton*, 25 F.4th at 234. Under that version of the facts, the Court cannot conclude that Cheatham is entitled to qualified immunity as a matter of law.

Accordingly, Plaintiff's objection to the qualified immunity recommendation is sustained, and qualified immunity is denied at this stage.

**d. Supervisory and official capacity theories**

Plaintiff also objects to the recommended disposition of supervisory and official capacity theories. Those objections do not present the same factual issue.

As to supervisory liability, the Court agrees with DE 160 that the Amended Complaint principally attributes the challenged conduct directly to Cheatham. (DE 160 at 17.) To the extent Plaintiff alternatively seeks to hold Cheatham liable for misconduct by subordinates, he has not produced evidence establishing that a subordinate engaged in conduct posing a "pervasive and unreasonable risk" of constitutional injury. Nor has he shown that Cheatham responded to such a pattern with deliberate indifference or tacit authorization, and that an affirmative causal link connected the supervisory failure to Plaintiff's injury. *See Shaw*, 13 F.3d at 799.. Summary judgment is, therefore, appropriate on any distinct supervisory liability theory.

The official capacity issue requires a different clarification. DE 160 states categorically that the acts of a single employee cannot establish *Monell* liability. (DE 160 at 16 n.9.) Although the isolated act of an ordinary municipal employee does not itself establish municipal policy, a single deliberate decision may constitute official policy when it is made by an official with final authority to establish municipal policy concerning the challenged subject matter. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986); *see also Swink v. S. Health Partners, Inc.*, 160 F.4th 438, 452–53

(4th Cir. 2025). DE 160's categorical statement that the act of a single employee cannot establish *Monell* liability is, therefore, too broad.

Plaintiff, however, has not produced evidence that Cheatham possessed final policymaking authority for Bamberg County concerning inmate medical payment policy. Operational discretion is not final policymaking authority; the official must have final authority to establish municipal policy on the challenged subject. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 126–27 (1988) (plurality opinion); *see also Pembaur*, 475 U.S. at 481–83. Plaintiff identifies no County ordinance, formal delegation, or other competent evidence vesting Cheatham with final authority to establish County policy governing medical payment deductions. Nor has Plaintiff produced evidence of sufficiently widespread comparable incidents to establish a County custom independently of the challenged decision concerning him.

Accordingly, even though Plaintiff's individual capacity constitutional claim survives, the official capacity claim fails for lack of the independent *Monell* showing. Summary judgment is granted on Plaintiff's supervisory and official capacity theories.

**e. Exhaustion and prospective relief**

The Report rejects Cheatham's PLRA exhaustion defense, finding that both sides submitted "Inmate Grievance/Request Record" forms concerning the dental payment dispute and that the evidence does not definitively establish Plaintiff's failure to complete an available grievance process. (DE 160 at 19–20.) Because failure to exhaust is an affirmative defense on which Cheatham bears the burden, *Anderson*

*v. XYZ Corr. Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir. 2005), the Court finds no error in that recommendation. Cheatham's Motion is not granted on exhaustion grounds.

Plaintiff's objection concerning prospective relief (DE 165-5) is overruled, although the Court does not adopt DE 160's premise that the challenged arrangement necessarily was an established Bamberg County policy rather than one attributable to Cheatham. That distinction does not resolve mootness. Plaintiff is no longer confined at Bamberg or Barnwell and is no longer subject to Cheatham's custody or administration. "As a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). Plaintiff has not shown a reasonable expectation that he will again be subjected to Cheatham's alleged dental payment arrangement.

Thus, whether the arrangement was written, unwritten, County-wide, or personal to Cheatham does not preserve Plaintiff's request for prospective relief. His damages claim, however, remains live.

**f. State law and statutory objections**

Plaintiff also specifically challenges DE 160's state law analysis. (DE 165-6 at 1–5.) He invokes S.C. Code Ann. §§ 24-5-80, 24-7-110, and 24-13-80; the written Bamberg medical procedure; negligence and gross negligence; and the SCTCA. He contends that Cheatham personally departed from the governing payment procedure and thereby breached duties owed to him. Plaintiff expressly abandons his claim for

outrage or intentional infliction of emotional distress. (DE 165-6 at 2.) The Court therefore does not address that abandoned theory on the merits.

Section 24-5-80 directs the governing body of each county to furnish persons confined in jail, among other necessities, "access to medical care." S.C. Code Ann. § 24-5-80. Section 24-7-110 similarly provides that "[t]he governing body of each county shall provide access to institutional medical personnel whenever necessary to render medical aid to sick inmates" and provides that the expenses of medical services and prescribed medicines are to be paid from available funds. *Id.* § 24-7-110.

Section 24-13-80 addresses inmate medical charges more specifically. It authorizes the appropriate administrator to establish criteria for reasonable deductions from an inmate's account to defray certain medical expenses. *Id.* § 24-13-80(B). For inmate-requested medical treatment, the statute limits the deduction to five dollars per occurrence, provides that the fee is not charged when the account balance is below ten dollars, and permits a deficiency balance to be carried forward and deducted after future deposits. *Id.* § 24-13-80(B)(2). The statute defines "administrator" as the county administrator, city administrator, or chief administrative officer of the county or municipality. *Id.* § 24-13-80(A)(4).

Those provisions, together with the Bamberg procedure stating that care would not be refused because of inability to pay, lend support to Plaintiff's contention that the particular advance payment arrangement may not have tracked the governing state and local payment framework. Section 24-13-80, in particular, is more specific than DE 160's abbreviated description suggests. But neither § 24-7-110

nor § 24-13-80 expressly resolves whether the outside dental appointment at issue could be conditioned on advance payment. The statutes, therefore, do not themselves establish the unlawfulness of Cheatham's particular arrangement.

That does not, however, establish a separate federal cause of action. A violation of state law does not, standing alone, establish a deprivation of federal rights under § 1983. *Weller v. Department of Soc. Services for Baltimore*, 901 F.2d 387, 392 (4th Cir. 1990). The Court has considered the statutory and policy evidence as relevant circumstances in deciding the Fourteenth Amendment claim, but the statutes do not themselves supply an independent federal claim.

Nor has Plaintiff established an individual state law damages claim against Cheatham based solely on those statutes. Sections 24-5-80 and 24-7-110 expressly place their duties upon the county governing body, and § 24-13-80 assigns the rulemaking function to the statutorily defined administrator. Plaintiff has not shown that those provisions create a private cause of action against a detention center director individually. *See Doe v. Marion*645 S.E.2d 245, 248–49 (S.C. 2007).

The SCTCA independently limits Plaintiff's negligence and gross negligence claims against Cheatham personally. It provides the exclusive tort remedy for loss caused by a governmental employee acting within the scope of official duties. *See* S.C. Code Ann. § 15-78-70(a). An employee ordinarily is not personally liable for in-scope conduct unless it "was not within the scope of his official duties or . . . constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." *Id.* § 15-78-70(b).

Contrary to DE 160, Plaintiff plainly does allege Cheatham's direct personal conduct. (*See* DE 165-6 at 1–5.) The Court does not adopt the Report insofar as it suggests otherwise. But direct participation is not the same thing as acting outside the scope of employment. The conduct Plaintiff attributes to Cheatham, determining payment and transportation arrangements for a detainee's outside dental care, was undertaken in Cheatham's capacity as detention center director. An alleged departure from governing procedures, even one amounting to negligence or gross negligence, does not by itself establish actual fraud, actual malice, intent to harm, a crime involving moral turpitude, or conduct outside the scope of official duties. Gross negligence itself is not one of the statutory exceptions to employee immunity in § 15-78-70(b).

Accordingly, Plaintiff's state law objection is sustained only insofar as DE 160 understates his allegation of Cheatham's direct participation and the significance of the statutes governing inmate medical access and payment. The objection is otherwise overruled, and Cheatham is entitled to summary judgment on the state law claims asserted against him individually.

**3. Gillespie's Motion to Quash Service and/or Dismiss**

No party objects to DE 162. The Court has reviewed that Report and the underlying record for clear error and finds none.

Plaintiff's December 2025 attempted service was ineffective. The USM-285 did not direct personal service to Gillespie. Instead, it directed certified mail to SHP personnel at an address in Tennessee, and an individual signed for the mailing

without identifying herself as Gillespie or as Gillespie's authorized agent. (DE 104.) Gillespie was also no longer employed by SHP at the time. Those circumstances do not satisfy Rule 4(e).

Dismissal, however, does not necessarily follow. Plaintiff proceeds in forma pauperis. In that circumstance, "in forma pauperis plaintiffs must rely on the district court and the U.S. Marshals Service to effect service of process[.]" *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3). Although an IFP plaintiff must provide sufficient information from which the defendant can be located with reasonable effort, the Court retains discretion to quash defective service and permit correction rather than impose dismissal where effective service appears achievable without unfair prejudice.

The District of South Carolina has taken that course in materially analogous circumstances including a former SHP employee. *See Collins v. S. Health Partners, Inc.*, No. 8:18-cv-01811-MGL-JDA, 2019 WL 132876, at *1–2 (D.S.C. Jan. 8, 2019) (adopting recommendation granting motion to quash, denying dismissal, and directing service after counsel provided information concerning the former employee). Here, Plaintiff attempted service using the limited employment information available to him while incarcerated. SHP has actual notice of this action, and the same counsel has appeared specially for Gillespie to challenge service. Any scheduling prejudice can be addressed through an amended scheduling order. The Court, therefore, adopts DE 162.

Within seven (7) days of entry of this Order, counsel appearing for Gillespie shall file a notice stating whether counsel is authorized to accept service on Gillespie's behalf. If counsel is not so authorized, counsel shall, within the same period, file under seal Gillespie's current or last-known address. If a service address is provided, the Clerk shall issue the necessary service documents, and the United States Marshals Service shall effect service in accordance with Rule 4. The address shall be used solely for purposes of service and shall not be disclosed to Plaintiff.

**E. Conclusion**

After a thorough review of the record, the applicable law, the three Reports and Recommendations, and Plaintiff's objections, the Court ORDERS as follows:

1. Plaintiff's Objections concerning SHP (DE 166) are **OVERRULED**. The Report and Recommendation concerning SHP (DE 158) is **ADOPTED AS MODIFIED** for the reasons stated in this Order.
2. SHP's Motion to Dismiss (DE 96) is **GRANTED** as to Plaintiff's claim under 42 U.S.C. § 1983. The Court does not decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) at this stage, and any state law claim against SHP not otherwise adjudicated remains pending.
3. Plaintiff's Objections concerning Cheatham (DE 165) are **SUSTAINED IN PART and OVERRULED IN PART** as set forth in Section D.2. The Report and Recommendation concerning Cheatham (DE 160) is **ADOPTED IN PART AND MODIFIED IN PART**.

4. Cheatham's Motion for Summary Judgment (DE 112) is **GRANTED IN PART and DENIED IN PART**. The Motion is **DENIED** as to Plaintiff's individual capacity Fourteenth Amendment damages claim and Cheatham's assertion of qualified immunity as to that claim. The Motion is **GRANTED** as to Plaintiff's supervisory liability and official capacity theories, his requests for declaratory and injunctive relief, and his state-law claims against Cheatham individually. The Motion is not granted on exhaustion grounds.
5. The Report and Recommendation concerning Gillespie (DE 162) is **ADOPTED**. Gillespie's Motion to Quash Service and/or Dismiss (DE 133) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's prior attempted service is **QUASHED**, but Gillespie's request for dismissal is **DENIED**.
6. Within seven (7) days of this Order, counsel appearing for Gillespie shall advise the Court whether counsel is authorized to accept service on her behalf. If counsel is not so authorized, counsel shall file under seal Gillespie's current or last known address, after which the Clerk and United States Marshals Service shall proceed with service as directed above.
7. Plaintiff's individual capacity Fourteenth Amendment damages claim against Cheatham, Plaintiff's claims against Gillespie, and any state law claims against SHP not otherwise disposed of remain pending. Because this

Order does not resolve the entire action, no final judgment shall be entered at this time.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 1, 2026